# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MIGDALIA FORT, M.D., MARIGDALIA K. RAMIREZ-FORT, M.D., and THE ESTATE OF ANA V. FORT,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. 22-583 (RK) (TJB)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the Motion filed by Defendant the United States of America (the "United States"), (ECF No. 61), seeking summary judgment on or dismissal of all claims against it brought by Migdalia Fort, M.D. ("Dr. Fort"), Marigdalia K. Ramirez-Fort, M.D. ("Dr. Ramirez-Fort"), and the Estate of Ana V. Fort (the "Estate") (collectively, "Plaintiffs").

The United States moves for summary judgment on Dr. Ramirez-Fort's and the Estate's claims, contending that they are time-barred. The United States seeks to stay Dr. Fort's claims, contending that the Court lacks subject matter jurisdiction over Dr. Fort's claims.[1] Plaintiffs filed an opposition brief, (ECF No. 63), and the United States filed a reply, (ECF No. 64). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the

---

[1] The United States also moves for dismissal of Plaintiffs' claims for strict liability and punitive damages, contending that the United States has not waived its sovereign immunity for such claims, and that Plaintiffs fail to state a claim for intentional infliction of emotional distress. As explained below, because the Court will dismiss or stay all of Plaintiffs' claims, it declines to reach these additional arguments.

United States's Motion for Summary Judgment on Dr. Ramirez-Fort's and the Estate's claims is **GRANTED** and its Motion to Stay of the case with respect to Dr. Fort's claims is likewise **GRANTED**.

## I.    BACKGROUND [2]

Plaintiffs are three generations of women who lived—and in the case of one Plaintiff, worked—at a campus of the United States Department of Veterans Affairs (the "VA") located in Lyons, New Jersey. (*See generally* Third Amended Complaint ("TAC"), ECF No. 59.) Plaintiffs' suit stems from their contention that each suffered severe personal injuries as a result of the unhealthy living conditions present in the apartment that Plaintiffs rented from the VA.[3]

### A.    THE NEW JERSEY APARTMENT

Dr. Fort began working as a "career employee" for the VA at its Lyons campus in August 1989 and was employed there for approximately three decades. (*Id.* ¶¶ 12, 19; Plaintiffs' Statement of Facts ("Pls.' SOF") ¶ 86, ECF No. 63-1.) From August 1989 until April 2019, Dr. Fort lived at an on-campus apartment rented from and owned by the VA (the "Apartment"). (TAC ¶¶ 2, 12, 15.) Dr. Fort's daughter—Dr. Ramirez-Fort—and Dr. Fort's mother—Ana V. Fort ("Ms. Fort")— lived with Dr. Fort in the Apartment beginning in August 1989. (*Id.* ¶¶ 13, 14, 21.) Dr. Fort and

---

[2] The United States's Motion seeks relief pursuant to two different legal standards: those applicable under Federal Rule of Civil Procedure 56 (for its statute of limitations argument) and Rule 12(b)(1) (for its subject matter jurisdiction argument). The facts here are largely drawn from the Third Amended Complaint and construed in the light most favorable to Plaintiffs as the non-moving parties. Where appropriate as indicated, the Court also considers documents from related litigation and declarations the United States submitted in connection with its Motion for Summary Judgment. Plaintiffs' Counterstatement of Material Facts is pulled directly from the Third Amended Complaint's allegations and is unaccompanied by any affidavits or other evidence supporting the TAC's claims. (ECF No. 63-1 at 3 n.1.)

[3] The TAC brings claims against the United States for negligence, gross negligence, premises liability, strict liability based on the alleged hazardous toxic mold condition, intentional infliction of emotional distress, and wrongful death and survivorship. (*See* TAC ¶¶ 94–143.)

Dr. Ramirez-Fort resided in the Apartment for thirty (30) years, while Ms. Fort lived in the Apartment from August 1989 until she passed away in 2005. (*Id.* ¶¶ 2, 12–14.)

The Apartment was located in a building built around 1902 and carpeted throughout. (*Id.* ¶¶ 22–23.) In August 1997, "the entire basement carpet at the Apartment had to be removed due to severe water damage," after which the Apartment continued to experience "[m]ultiple incidents of sustained water leaks" in the following years. (*Id.* ¶¶ 34–35.) In 2017, Dr. Fort observed black mold in the Apartment and informed the VA. (*Id.* ¶ 42.) The VA informed Dr. Fort that it had tested the Apartment air quality and that it was "safe." (*Id.* ¶ 43.) Dr. Fort made "repeated attempts to contact the VA" to inform it that she continued to observe black mold, but the VA "failed to return her calls." (*Id.* ¶ 55.) On December 4, 2018 and January 3, 2019, the VA sent notices to Dr. Fort that for "safety and health reasons" it was "clos[ing]" the Apartment because of "aging piping," "water leaks," and "asbestos pipe covering material." (*Id.* ¶¶ 53, 58.) In January 2019, a VA "engineering safety officer" tested the Apartment's air quality, checked for mold, and was provided a sample of the black mold by Dr. Fort. (*Id.* ¶ 55.) On February 27, 2019, the VA informed Dr. Fort that they had confirmed "significant mold growth present in the attic stairwell" of the Apartment as well as "minor mold growth in other areas of the apartment." (*Id.* ¶ 62.) Testing by an outside company at Dr. Fort's commission confirmed hazardous levels of mold spores and carcinogenic gases secreted by mold spores in the Apartment. (*Id.* ¶ 61.)

The TAC alleges that carpeting, especially when old, is able to trap asbestos particles and mold spores, which in turn produce allergens, carcinogens, and other toxic substances. (*Id.* ¶¶ 24–26.) These substances can cause allergic reactions, and after "chronic exposure," can cause more severe symptoms including "skin rashes, respiratory symptoms/asthmatic attacks, fatigue, central nervous system symptoms, headaches/migraines, and cancer." (*Id.* ¶¶ 27–28.) All three Plaintiffs

suffered "physical, mental, emotional, and economic issues" they allege stemmed from their yearslong exposure to mold while living in the Apartment. (*Id.* ¶ 3.)

Dr. Fort experienced her first symptoms related to "mold intoxication" in the mid-1990s. (*Id.* ¶¶ 29, 33.) Dr. Fort's symptoms worsened in 2012 and included shortness of breath, difficulty breathing, and chest tightness. (*Id.* ¶ 37.) Dr. Fort was hospitalized after an asthma attack in 2012 that she alleges was brought on by "mold intoxication." (*Id.* ¶ 38.) Dr. Fort developed red, watery eyes and experienced deteriorating vision from 2015 to 2018, at which point she was diagnosed with allergic conjunctivitis, resulting in medical and surgical treatment. (*Id.* ¶¶ 40–41.) Dr. Fort experienced worsening headaches, dizziness, and vision changes in May 2018, resulting in testing that revealed a lesion in her brain and a mass in her breast. (*Id.* ¶¶ 45–48.) In 2018, Dr. Fort was diagnosed with Stage IV breast cancer that had spread to her brain. (*Id.* ¶¶ 3, 32.) Since her cancer diagnoses, Dr. Fort has undergone extensive radiation treatment, surgery, and chemotherapy. (*Id.* ¶¶ 50, 52, 56–57, 59, 65–66.) Dr. Fort's cancer treatment is ongoing. (*Id.* ¶ 66.)[4]

Dr. Ramirez-Fort and Ms. Fort also experienced symptoms associated with chronic mold exposure. (*Id.* ¶ 30–31.) Ms. Fort passed away in 2005 from lung cancer, which the TAC alleges resulted from "black mold intoxication and mycotoxin exposure" at the Apartment. (*Id.* ¶¶ 36, 78.) Dr. Ramirez-Fort, who has served as her mother's "primary medical caregiver" during her cancer treatment, suffered "vernal conjunctivitis, chronic migraines[,] and an increased risk of cancer" along with property damage as a result of the mold in the Apartment. (*Id.* ¶¶ 67, 79.)

---

[4] Dr. Fort's alleged damages include personal injuries, including "Stage IV metastatic breast cancer to the brain, diabetes mellitus type 2, non-alcoholic fatty liver disease, autoimmune thyroid disorder, obliteration of tear ducts." Dr. Fort, along with Dr. Ramirez-Fort, also allege damages including "emotional distress, loss of earnings, medical bills, treatment, and expenses," loss of personal property damaged by mold at the Apartment, and costs associated from having to vacate the Apartment in April 2019. (TAC ¶¶ 65, 76–77.)

Dr. Fort was terminated from her job at the VA in 2019. (Pls.' SOF ¶ 86.) At some point in 2019, Dr. Fort and Dr. Ramirez-Fort moved from New Jersey to Puerto Rico, where Dr. Fort was receiving cancer treatment. (*Id.*)

## B.   PROCEDURAL HISTORY

The United States's pending Motion seeks relief on two grounds the Court will address. First, the United States seeks a stay of Dr. Fort's claims until Dr. Fort can file an administrative claim under the Federal Employees' Compensation Act ("FECA")—the federal statute that offers compensation to federal employees for employment-related injuries—and the Department of Labor's Office of Workers' Compensation Programs ("OWCP") renders a decision on it; the United States contends that until then, this Court lacks subject matter jurisdiction over her claims because there is a "substantial question" of FECA's application. (Def.'s Br. in Support of its Mot. ("Def.'s Br.") at 25–36, ECF No. 61-1.) Second, the United States seeks summary judgment on Dr. Ramirez-Fort's and the Estate's claims, arguing that they were not filed within the statutorily-mandated period and are therefore untimely. (*Id.* at 15–24.)

Accordingly, the Court will separately summarize the portions of Dr. Fort's litigation history and then Dr. Ramirez-Fort's and the Estate's litigation history as relevant to the parties' arguments.

## 1.   Dr. Fort's Claims

On February 27, 2019, Dr. Fort filed a Federal Tort Claims Act ("FTCA") administrative claim with the VA for her personal injuries alleged to have resulted from exposure to asbestos, mold, and other carcinogens in the Apartment. (TAC ¶ 5; Ex. G to Decl. of Nancy A. O'Donnell ("O'Donnell Decl."), ECF No. 61-3 at *22–25.) The claim alleged that Dr. Fort's injuries stemmed from exposure to mold and asbestos and described exposure that occurred in Dr. Fort's Apartment

on the Lyons campus as well as in a building on campus where Dr. Lyons worked. (Ex. G. to O'Donnell Decl. at *25.) On November 13, 2019, counsel for the VA emailed Dr. Fort and her attorney, stating that they could not decide her administrative claim until Dr. Fort filed a FECA administrative claim and the OWCP rendered a decision on it. The VA's attorney wrote:

> Since it is not certain that injuries for which you claim damage are not covered by FECA, this office will not be in a position to issue a decision on your FTCA administrative claim until the [OWCP] has been presented with and adjudicated, a claim for compensation under the FECA. Please also note that, until this issue is resolved by OWCP and a FECA coverage determination is rendered, a federal district court lacks jurisdiction to entertain an action under the FTCA. . . . Please be advised the time limitations for filing a FECA claim are set forth at 5 USC 8122 and that the filing of an FTCA claim does not toll the limitations for filing a FECA claim.

(Ex. B to Decl. of Eric Rey ("Rey Decl."), ECF No. 61-5 at *23–24.)

Dr. Fort did not file a FECA claim and instead initiated the instant litigation—at that time as the sole Plaintiff—on February 15, 2020 in the United States District Court for the District of Puerto Rico. (TAC ¶¶ 8, 80; *see also* ECF No. 1.) On May 20, 2021, the United States moved to stay the litigation, arguing that Dr. Fort's administrative claim's allegations that she was exposed to mold in the workplace created a "substantial question" of whether Dr. Fort's claims were covered by FECA, such that the district court lacked subject matter jurisdiction over the matter. (ECF No. 23.)

In a separate suit, Dr. Fort sued the VA for hostile work environment and employment discrimination on March 18, 2021. *See* Compl., *Fort v. Wilkie*, No. 21-20656 (D.N.J. Mar. 18, 2021), ECF No. 1. In that matter, Dr. Fort alleged that she developed "non-specific symptoms of mold intoxication in the 1990s" and that over a two-year period beginning in 2015, her symptoms "were aggravated whenever she worked in the Acute Psychiatric Unit in Building 143C of the Lyons Campus." Am. Compl., *Fort v. Wilkie*, No. 21-20656 (D.N.J. May 11, 2021), ECF No. 4

¶¶ 18.[5] Dr. Fort identified "black-colored mold" throughout her workplace and reported it to her supervisor. *Id.* ¶¶ 19–22, 28. Dr. Fort's pleadings in her employment discrimination suit, like the TAC in the present matter, recount her history of medical treatment that allegedly resulted from her mold exposure. *Id.* ¶¶ 23–27.

The United States submitted a declaration and letter opinion from Jennifer Valdivieso ("Valdivieso"), the Deputy Director for Federal Employees' Compensation at the OWCP, that states the OWCP's position on FECA's applicability to Dr. Fort's claims. (Decl. of Jennifer Valdivieso ("Valdivieso Decl."), ECF No. 61-4.) Valdivieso is familiar with FECA claims, the pleadings in this matter, and Dr. Fort's pleadings in her employment discrimination case. (*Id.* ¶¶ 1–2.) At the United States's request, Valdivieso formed an opinion on whether the FECA would cover Dr. Fort's injuries. (*Id.* ¶ 4.) In that opinion, dated April 26, 2022, Valdivieso opined that there was a "substantial likelihood that [Dr. Fort's] injuries would be covered under FECA." (Ex. A to Valdivieso Decl. at 3.) Valdivieso noted that Dr. Fort's complaints "allege a work history of exposure to black-colored mold at the Acute Psychiatric Unit in Building 143C of the Lyons Campus. From the facts as alleged in the complaints the workplace exposure to mold also aggravated/contributed to her alleged injuries." (*Id.*) Surveying decisions of the Employees' Compensation Appeals Board, Valdivieso noted that an employee's workplace exposure that "either aggravates or accelerates an employee's preexisting condition" can be covered by FECA. (*Id.* at 1.)[6]

---

[5] The United States provided the Amended Complaint in Dr. Fort's employment discrimination suit in conjunction with its Motion. (*See* Ex. A to Rey Decl.)

[6] Valdivieso also opined that Dr. Fort's injuries from exposure at the Apartment may be covered by FECA "if OWCP develops the evidence and determines that Dr. Fort was required or expected to live in the residence." (Ex. A to Valdivieso Decl. at 3.)

### 2.    Dr. Ramirez-Fort's and the Estate's Claims

After Dr. Fort initiated this federal lawsuit, Dr. Ramirez-Fort and the Estate submitted FTCA administrative claims for personal injuries suffered as a result of conditions at the Apartment, which were denied on August 14, 2020. (Def.'s Statement of Facts ("Def.'s SOF") ¶¶ 1–2, 4–5, ECF No. 61-2; Pl.'s SOF ¶¶ 1–2, 4–5; Exs. A, B, D & E to O'Donnell Decl.) The denial notices stated that in order to challenge the decision in court, Dr. Ramirez-Fort and the Estate must file federal suits on within six months of the notices' dates—i.e. by February 14, 2021. (Exs. B & E to O'Donnell Decl.)

The parties do not contest that Dr. Ramirez-Fort and the Estate were not included as Plaintiffs in any suit until they were added to the pleadings in the current matter on April 1, 2022, (Def.'s SOF ¶¶ 7–8; Pls.' SOF ¶¶ 7–8), well beyond six months after their FTCA administrative claims were denied. Dr. Fort states that she believed her attorney who represented her from the filing of this case until fall 2021—Humberto Cobo-Estrella ("Cobo-Estrella")—had "filed a motion with [the] Court to include [Dr. Ramirez-Fort] and [the Estate] as co-plaintiffs in June or July 2020." (TAC ¶ 89.) Filings from Cobo-Estrella on Dr. Fort's behalf appear on the docket throughout 2020 and up until August 2021. (ECF Nos. 1, 8, 9, 11, 15, 20, 21, 24, 28.) At some point, Dr. Fort's relationship with Cobo-Estrella deteriorated, reflected in Dr. Fort's October 28, 2021 letter to the Court asking to "dissolve[]" her relationship with her attorney and that the litigation be stayed while she sought new counsel. (ECF No. 31 at 1–2.) Dr. Fort also indicated that she would seek to add her daughter and mother as plaintiffs in the matter. (*Id.* at 1.)

Shortly afterwards, Dr. Fort wrote to the Court again that she believed that FTCA claim notices for her mother's estate and daughter had been filed in February 2020 and that Cobo-Estrella had at some point filed a motion to add the Estate and Dr. Ramirez-Fort as plaintiffs to her federal

case. (ECF No. 33 at 2.) On November 15, 2021, the Court ordered Cobo-Estrella's withdrawal from the matter and withheld decision on the United States's request to stay the matter and Dr. Fort's request to add her mother's estate and daughter to the complaint pending appearance by new plaintiff's counsel. (ECF No. 37.)

Dr. Fort secured new representation and requested, joined by the United States, to transfer the matter to the District of New Jersey. (ECF Nos. 42, 44.) On February 4, 2022, the Court transferred the matter pursuant to 28 U.S.C. 1404(a). (ECF No. 45.) After transfer and appearance by Dr. Fort's new attorney, Dr. Fort filed a Second Amended Complaint adding Dr. Ramirez-Fort's and the Estate as Plaintiffs on April 1, 2022. (ECF No. 53.)

The United States moved to dismiss all claims, raising statute of limitations and FECA arguments identical to those raised in their pending Motion. (ECF No. 55.) In opposition to the statute of limitations argument, Plaintiffs argued, in part, that a decision on the statute of limitations was premature because facts supporting their equitable tolling argument had not yet been developed or fleshed out through discovery. (ECF No. 56 at 21.) On February 24, 2023, the Honorable Georgette Castner administratively terminated the United States's motion and deferred decision on the statute of limitations argument. (ECF No. 58.) Judge Castner noted that "Plaintiffs did not file a Rule 56(d) affidavit in opposition to Defendant's motion. In addition, the Court is not clear what discovery Defendant could provide that would inform the equitable estoppel analysis." (*Id.* at 3.) To give Plaintiffs an opportunity to rebut the United States's statute of limitations argument, the Court granted Plaintiffs leave to file a TAC laying out the facts supporting their equitable tolling argument. (*Id.*) Plaintiffs filed their TAC on March 31, 2023, (ECF No. 59), and the United States filed its pending Motion shortly afterwards, (ECF No. 61).

## II.   LEGAL STANDARD

### A.   MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view[] the facts in the light most favorable to the party against whom summary judgment was entered." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the initial burden of establishing its right to summary judgment. *See Celotex Corp.*, 477 U.S. at 323. A movant may show that a material fact is not genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Celotex Corp.*, 477 U.S. at 322–23 ("[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."). Once the movant meets its threshold burden under Rule 56, the non-moving party must present evidence to establish a genuine issue as to a material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (on summary judgment the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts" (citation omitted)). Finally, "in ruling on a motion for summary judgment, the judge must view the

evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### B.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. "The burden of demonstrating that a case falls within the jurisdiction of the federal court rests upon the party asserting jurisdiction." *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 911 F.3d 666, 670–71 (3d Cir. 2018) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A movant may challenge the Court's subject matter jurisdiction either through a facial or factual attack on the complaint. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). "A facial attack 'concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites.'" *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015) (citing *CNA*, 535 F.3d at 139). On a factual attack, the court may consider evidence "outside the pleadings," *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014), including "affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891–92 (3d Cir. 1977)). When a motion is "supported by a sworn statement of facts," it "must be construed as factual, rather than facial." *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982).

### III.    <u>DISCUSSION</u>

The United States moves for summary judgment on Dr. Ramirez-Fort's and the Estate's claims because they are barred by the FTCA's statute of limitations. The United States also argues that the Court lacks subject matter jurisdiction over Dr. Fort's claims because there is a "substantial

question" whether Dr. Fort's claims are covered by FECA. For the reasons given below, the Court agrees.

### A.  STATUTE OF LIMITATIONS

The United States seeks summary judgment on Dr. Ramirez-Fort's and the Estate's FTCA claims, contending that they are time-barred because they were not filed within six months of the VA denying their administrative claims. (Def.'s Br. at 16–18.) Summary judgment may be granted on claims that are barred by the applicable statute of limitations. *See Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016), *as amended* (Feb. 24, 2016). As the party moving for summary judgment on its statute of limitations defense, the United States bears the burden to show that Plaintiffs' claims are time-barred. *See Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002).

The United States is generally immune from suit, except where it has consented to a court's jurisdiction over it. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, *et seq.*, operates as a "limited waiver of sovereign immunity" under certain circumstances for the negligent acts or omissions of federal employees. *United States v. Orleans*, 425 U.S. 807, 813 (1976). The United States's consent to suit under limited circumstances "must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (cleaned up) (citations omitted). The United States's consent to suit is dependent on a "statute of limitations requiring that a suit against the Government be brought within a certain time period." *United States v. Dalm*, 494 U.S. 596, 608 (1990). The FTCA's limitations provision provides that:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail,

> of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). This provision reflects a "balance struck by Congress in the context of tort claims against the Government." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). "The Court therefore may not 'extend the waiver beyond that which Congress intended,' nor is the Court 'free to construe [the limitations provision] so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims.'" *Seiss v. United States*, 792 F. Supp. 2d 729, 732 (D.N.J. 2011) (quoting *Kubrick*, 444 U.S. at 117–18).

Dr. Ramirez-Fort and the Estate do not contest the fact that their claims are untimely absent equitable tolling. Their FTCA administrative claims were denied on August 14, 2020. (Def.'s SOF ¶¶ 1–2, 4–5; Pl.'s SOF ¶¶ 1–2, 4–5; Exs. A, B, D, & E to O'Donnell Decl.) The denials notified Plaintiffs that they had six months to file suit in federal court if they chose. (Exs. B & E to O'Donnell Decl.) Dr. Ramirez-Fort and the Estate therefore needed to file suit by February 14, 2021. Plaintiffs concede that the first complaint filed naming them as Plaintiffs was the Second Amended Complaint in the current matter, filed on April 1, 2022, more than one year after the statute of limitations expired. (Def.'s SOF ¶¶ 7–8; Pls.' SOF ¶¶ 7–8.) Without more, the Estate's and Dr. Ramirez-Fort's claims are time-barred. *See Sconiers v. United States*, 896 F.3d 595, 599 (3d Cir. 2018) (affirming district court's grant of summary judgment on statute of limitations grounds because the plaintiff's suit was two months' late).

Instead, Plaintiffs argue that the time to file Dr. Ramirez-Fort's and the Estate's claims should be equitably tolled based on their attorney's mistakes and the medical, housing, and professional issues Dr. Fort and Dr. Ramirez-Fort faced that impeded them from bringing their claims in a timely manner. (Pls.' Opp'n Br. at 17–22.) The United States contends that these

circumstances do not rise to the level of "extraordinary" obstacle such that equitable tolling is appropriate. (Def.'s Br. at 18–25.)[7]

An otherwise time-barred claim may be resuscitated when the plaintiff shows that she "has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *D.J.S.-W. ex rel. Stewart v. United States*, 962 F.3d 745, 749–50 (3d Cir. 2020) (cleaned up) (quoting *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). Tolling is an "extraordinary remedy," *id.* at 750 (quoting *Santos*, 559 F.3d at 197), permitted only "when the principles of equity would make the rigid application of a limitation period unfair," *id.* at 750 (cleaned up) (quoting *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998)). A court should be especially cautious is equitably tolling a statute of limitations "'in cases involving the waiver of the sovereign immunity of the United States,' such as those arising under the FTCA." *Id.* at 750 (quoting *Santos*, 559 F.3d at 197–98).

The Third Circuit recognizes three "principal" situations in which a court may find a limitations period equitably tolled: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting . . . her rights; or (3) where the plaintiff has timely asserted . . . her rights mistakenly in the wrong forum." *Id.* at 750 (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)). The party invoking the doctrine must also have

---

[7] Plaintiffs' brief suggests that Judge Castner's four-page decision granting Plaintiffs leave to file the TAC, (ECF No. 58), implicitly found that the TAC's alleged facts were sufficient to find equitable tolling of Dr. Ramirez-Fort's and the Estate's claims, (Pls.' Opp'n Br. at 3, 19 n.5.) There is no merit to this position. Rather than implicitly finding for Plaintiffs, the Court's prior Opinion explicitly declined to decide the statute of limitations argument and granted Plaintiffs leave to file their amended pleading in order to allege in their pleading or state in an affidavit submitted in opposition to summary judgment setting forth "the facts underpinning Plaintiffs' equitable-estoppel arguments." (ECF No. 58 at 3–4, 4 n.4.)

"exercised due diligence in pursuing and preserving her claim." *Id.* at 750 (quoting *Santos*, 559 F.3d at 197).

Plaintiffs assert multiple alleged facts that they contend, taken together, constitute "extraordinary" circumstances that prevented them from filing suit on behalf of Dr. Ramirez-Fort and the Estate. They point to: (1) Dr. Fort's termination from her job in 2019; (2) Dr. Ramirez-Fort's termination from her job; (3) Dr. Fort and Dr. Ramirez-Fort being "forced to move" from New Jersey to Puerto Rico for Dr. Fort's cancer treatment in 2019; (4) the Covid-19 pandemic; (5) issues with a contractor that "le[ft] [Dr. Fort] essentially homeless" in Puerto Rico; and (6) the failure of Plaintiffs' attorney (Cobo-Estrella) "to follow [Plaintiffs'] instructions and file an amended complaint adding Dr. Ramirez-Fort and the Estate of Ana." (Pls.' Opp'n Br. at 19.) The Court finds that these circumstances, assumed to be true and considered cumulatively, are not "extraordinary" such that equitable tolling is appropriate.

The Court begins with the perhaps most compelling potential basis for equitable tolling Plaintiffs assert: the failure of Plaintiffs' attorney to file an amended complaint adding Dr. Ramirez-Fort and the Estate. Generally, an attorney's mistake does not justify equitable tolling. "[T]olling will never extend to 'a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline.'" *D.J.S.-W. ex rel. Stewart*, 962 F.3d at 750 (quoting *Holland v. Florida*, 560 U.S. 631, 651 (2010)); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling[.]"); *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) ("In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." (citation omitted)). However, attorney misconduct that "goes beyond garden variety neglect," such as when "an attorney

15

affirmatively lies about taking actions he never took or abandons his client or makes many misstatements of law," may constitute extraordinary circumstances. *Rascoe v. Cody*, 763 F. App'x 228, 232–33 (3d Cir. 2019) (citations omitted).

Plaintiffs here have not alleged, let alone offered any specific facts or evidence suggesting that Cobo-Estrella's conduct in the litigation rose to this level. The TAC asserts that Dr. Fort "believed the request to add [her co-Plaintiffs] had already been made" by her attorney, (TAC ¶ 89), and that Plaintiffs "at all times, were under the impression that their attorney was going to amend the complaint to add Dr. Ramirez-Fort and the Estate of Ana Fort after the administrative claim was resolved, and/or had done so," (TAC ¶ 85). However, assuming *arguendo* its truth, this does not constitute an extraordinary circumstance that prevented Plaintiffs from timely filing. The TAC makes no assertion that Cobo-Estrella lied about the status of the case, represented he intended to or was in the process of filing suit on behalf of Dr. Ramirez-Fort and the Estate, or made misstatements of law. *See Minor v. Johnson*, No. 17-3741, 2020 WL 2744587, at *4 (D.N.J. May 27, 2020) (declining to equitably toll statute of limitations for civil rights claim where plaintiff "d[id] not contend that his attorney affirmatively lied about actions he took, abandoned Plaintiff, or even made misstatements of law"); *White v. United States*, No. 12-7567, 2013 WL 5406635, at *4 (D.N.J. Sept. 25, 2013) (finding equitable tolling of FTCA's statute of limitations unwarranted when attorney mistakenly sent notice to the wrong address).

Nor is there evidence that Dr. Fort's counsel abandoned her. For the six months following the denial of Dr. Ramirez-Fort's and the Estate's FTCA claims—from August 14, 2020 to February 14, 2021—the docket reflects active participation by Cobo-Estrella. On August 28, 2020, Cobo-Estrella filed a brief opposing the United States's motion to dismiss. (*See* ECF No. 11.) On October 8, 2020, counsel filed a motion for leave to file an amended complaint that removed

several improperly named defendants but tellingly did not add Dr. Ramirez-Fort or the Estate as plaintiffs. (*See* ECF No. 15.) On March 15, 2021 and June 1, 2021, Cobo-Estrella again filed briefs opposing motions by the United States. (*See* ECF Nos. 21, 24.) On August 2, 2021, Cobo-Estrella participated in a settlement conference on Plaintiffs' behalf. (ECF Nos. 27 & 28.) While the docket does reflect a breakdown in the attorney-client relationship in later summer and fall 2021, this was long after the statute of limitations had expired.

Further, Plaintiffs have not explained their "due diligence" in attempting to prosecute their case. *D.J.S.-W. ex rel. Stewart*, 962 F.3d at 750. Showing diligence is a separate and necessary showing in order to establish equitable tolling based on attorney misconduct. *See Russo v. Am. Airlines, Inc.*, 340 F. App'x 816, 819 (3d Cir. 2009) (describing "due diligence" as a "threshold" requirement to claim equitable tolling). Plaintiffs' mere statement that they "request[ed]" Cobo-Estrella to add Dr. Ramirez-Fort and the Estate to the case, without alleging that they ever followed up to confirm or inquire into the actions their attorney supposedly took, is insufficient to show due diligence in the prosecution of their claims. *See Rodriguez v. Atl. Cnty. Jail*, No. 23-925, 2023 WL 8751288, at *4 (D.N.J. Dec. 19, 2023) (declining to find equitable tolling because even if the plaintiff's attorney abandoned him, "Plaintiff fails to set forth any facts to show that he contacted his attorney or inquired about his case, or took any other action, for over two years"); *Wimbush v. Jenkins*, No. 13-4654, 2014 WL 1607354, at *8 (D.N.J. Apr. 22, 2014) (declining to find equitable tolling because although the plaintiff's allegations regarding his attorney's misleading conduct were "more troublesome," the plaintiff's affidavit and brief did not "provide sufficient details of the steps that Plaintiff or Plaintiff's new counsel took to ensure that the action was proceeding in a timely manner"). Therefore, the dearth of any facts in Plaintiffs' brief, TAC, Statement of Facts,

or especially in any separate affidavit or declaration describing Plaintiffs' due diligence to ensure their claims were filed precludes relief on this basis.

The myriad of other challenges Plaintiffs chronicled, so it appears predominantly in 2019, while difficult and unfortunate, likewise do not justify equitable tolling. "Equitable tolling may be granted due to a plaintiff's medical issues, but such issues must create an extraordinary barrier from timely filing to justify application of equitable tolling." *See Taylor v. Computer Scis. Corp.*, No. 20-1848, 2022 WL 2046887, at *4 (D.N.J. June 6, 2022). A party seeking equitable tolling due to medical issues must show not just that he was "suffering from a serious or even debilitating disease" but that "his medical condition rendered him unable to pursue his legal rights." *Mitchell v. New Jersey*, No. 22-6884, 2023 WL 8802707, at *5 (D.N.J. Dec. 20, 2023) (collecting cases). In *Mitchell*, the Court held that the petitioner's allegations that he was infected with HIV, developed AIDS, and suffered from mental instability and depression, even taken as true, were insufficient to warrant equitable tolling absence explanation of how the medical issue affected the ability to file. *Id.* at *5–6; *cf. Champney v. Sec'y Pa. Dep't of Corr.*, 469 F. App'x 113, 117 (3d Cir. 2012) ("For [equitable] tolling to be appropriate, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely action." (cleaned up) (citing *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001))).

The Court has carefully considered the life disruptions described in Plaintiffs' TAC and brief, including the life-saving cancer treatment Dr. Fort underwent in 2019 as well as the turmoil of Drs. Fort and Ramirez-Fort losing their jobs, moving to Puerto Rico, and quarreling with their housing contractor. Without minimizing the significant challenges Plaintiffs faced in 2019, the Court does not find sufficient evidence that these circumstances constituted an "extraordinary" disruption preventing Dr. Ramirez-Fort and the Estate from subsequently filing between August

2020 and February 2021. According to the TAC, the serious treatment Dr. Fort underwent for her brain and breast cancer largely occurred from December 2018 until sometime in 2019. (TAC ¶¶ 52, 56–57, 59, 63, 66.) The last date of treatment listed in the TAC is August 6, 2019, after which the TAC generally states that "Dr. Fort continues to undergo cancer treatment." (*Id.* ¶ 66.) Dr. Fort's termination and her decision to move from New Jersey to Puerto Rico also occurred in the early months of 2019. (*Id.* ¶¶ 63–64.) Plaintiffs do not state when Dr. Ramirez-Fort was terminated from her job, but in any event it is unclear and unstated how Dr. Ramirez-Fort's termination and role as her mother's "primary medical caregiver," (TAC ¶ 67; Pls.' SOF ¶ 86), affected Dr. Ramirez-Fort's ability to subsequently file suit. Plaintiffs generally reference the COVID-19 pandemic but likewise do not explain how the pandemic, which began six months before they received their FTCA claim denial notice, affected their ability to file. *See Peek v. United States*, No. 20-9747, 2023 WL 8110795, at *10 (D.N.J. Nov. 22, 2023) (noting that an equitable tolling argument relying on COVID-19's incidence "is more compelling during the very early months of the COVID-19 pandemic"). In short, the TAC and Plaintiff's submissions are devoid of any specific allegation that occurred after 2019, let alone how these factors affected the ability to file suit from August 2020 to February 2021 during the limitations period. The absence of any explained causal connection between these earlier disruptions and Plaintiffs' "ability to file a timely action" is fatal to their argument. *Champney*, 469 F. App'x at 117.[8]

---

[8] Persuasively, the United States also points to other litigation Plaintiffs were engaged in at the time, arguing that Plaintiff's prosecution of these claims undermines their claim of inability to monitor the case at bar. (Def.'s Br. at 24–25.) These cases include Dr. Ramirez-Fort's suit against her former employer, Dr. Fort's suit against the contractor who worked on her Puerto Rico home and its appeal, and Dr. Fort's workplace discrimination suit against her former employer. (*See* Def.'s SOF ¶¶ 9–12; Pls.' SOF ¶¶ 9–12.) Although not necessary to its conclusion, the Court agrees that this supports finding equitable estoppel inappropriate here. *See Alicia v. Karestes*, 389 F. App'x 118, 121 (3d Cir. 2010) (finding fact that petitioner filed a habeas petition "during the time the alleged impairment supposedly prevented an earlier filing" undermined his claim that his medical condition prevented him from filing); *Mitchell*, 2023 WL 8802707, at *5 (finding that petitioner filing a petition for post-conviction relief during the period when he contended his medical

Finally, the Court addresses Plaintiffs' argument that a decision on the statute of limitations question is premature because Plaintiffs have not had the opportunity to conduct discovery into evidence supporting tolling. (Pls.' Opp'n Br. at 20 n.6, 22.) While Plaintiffs are correct that no discovery has been conducted in this case, they are wrong that discovery is needed to resolve their equitable estoppel claim. In *Alicia v. Karestes*, the Third Circuit rejected an argument that the district court "should have conducted more fact-finding, and specifically should have held an evidentiary hearing, to determine [the petitioner's] equitable tolling motion." 389 F. App'x 118, 121 (3d Cir. 2010).[9] In affirming the district court's dismissal of the petition without an evidentiary hearing, the Third Circuit wrote that the plaintiff "has not proffered new evidence other than the facts already discovered and asserted." *Id.* at 122; *see also Natalizzo v. Astrue*, No. 12-2490, 2012 WL 4846657, at *6 (D.N.J. Oct. 10, 2012) (finding plaintiff had not established equitable tolling because there was "no genuine issue of material fact regarding counsel's failure to exercise due diligence in seeking the request for extension of time"). Plaintiffs' allegations here do not indicate that there is more information to uncover related to the time period of 2020 to 2021 that would inform the Court's decision, Plaintiffs' assertion that "discovery could very well shed additional light and details on [their] challenges" notwithstanding. (Pls.' Opp'n Br. at 20 n.6.) As Judge Castner previously noted, the facts that could support Plaintiffs' equitable tolling arguments—regarding Plaintiffs' medical history and other personal difficulties, as well as their communications with Cobo-Estrella—are solely within their control, not the United States's. (ECF

_____

conditions prevented him from filing a habeas petition evidenced that "the alleged extraordinary circumstances were no longer present").

[9] Although *Alicia* involved equitable tolling applied to the filing of a habeas petition, rather than a tort claim against the federal government, the standard for equitable tolling applied in *Alicia* mirrors what plaintiff must show here. *See Alicia*, 389 F. App'x at 121–22 (petitioner must show "extraordinary circumstances caused his failure to timely file" and the exercise of "reasonable diligence"). Therefore, the Court finds *Alicia* persuasive here.

No. 58 at 3.) Moreover, Plaintiffs' declined to file a counterstatement of facts "citing to the affidavits and other documents submitted in support of the motion." Local Civ. R. 56.1(a). Even construing all of Plaintiffs' factual allegations in the light most favorable to Plaintiffs, the Court does not find equitable tolling warranted. Permitting the case to proceed to discovery is therefore unwarranted.[10]

Therefore, the Court finds that Dr. Ramirez-Fort and the Estate have not demonstrated "extraordinary" circumstances that prevented them from timely filing their claims, and therefore equitable tolling is inapplicable.[11]

### B.   FEDERAL EMPLOYEES' COMPENSATION ACT AND SUBJECT MATTER JURISDICTION

The United States argues that the Court lacks subject matter jurisdiction over Dr. Fort's claims because there is a "substantial question" over whether FECA applies and that the Court

---

[10] Plaintiffs' request to proceed to discovery is perplexing given that Judge Castner explicitly granted Plaintiffs the opportunity to file a TAC that added specific factual allegations regarding their equitable estoppel arguments. (*See* ECF No. 58 at 3–4.) Judge Castner observed that Plaintiffs had added factual allegations in their opposition brief, rather than in their complaint or statement of facts, and that Plaintiffs had not filed an affidavit in response to the United States's summary judgment motion. (*Id.* at 3–4, 4 n.4.) Judge Castner permitted Plaintiffs to file their TAC adding factual allegations and, upon the United States refiling its motion for summary judgment, ordered Plaintiffs to "either file a Responsive Statement [of facts] in accordance with Local Civil Rule 56.1 or an Affidavit in accordance with Rule 56." (*Id.* at 4 n.5.) Plaintiffs' added allegations in the TAC did not contain the detailed allegations explaining how they were unable to timely file. (*See* TAC ¶¶ 80–93.)

[11] Plaintiffs also argue in a footnote that they have "a legitimate argument that they mistakenly filed in the wrong forum"—i.e. the District of Puerto Rico rather than New Jersey. (Pls.' Opp'n Br. at 18 n.2); *see also D.J.S.-W. ex rel. Stewart*, 962 F.3d at 750 (recognizing equitable tolling "where the plaintiff has timely asserted . . . her rights mistakenly in the wrong forum" (citation omitted)). Firstly, an argument mentioned in passing in a footnote is considered waived. *See John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). Plaintiffs did not timely file in the District of Puerto Rico and this basis for equitable tolling is inapplicable.

Plaintiffs also argue that the United States will not suffer prejudice if the claims against Dr. Ramirez-Fort and the Estate are found timely because they are related to Dr. Fort's claims, which are timely. (Pls. Opp'n Br. at 21.) Plaintiffs offer no authority that prejudice is a relevant consideration for equitable tolling. Even if prejudice were relevant, the United States would be prejudiced by having to litigate claims involving unique injuries of two additional plaintiffs. Furthermore, the fact that the Court, as held below, is staying Dr. Fort's claims means that the case will not be proceeding at present.

therefore must stay the litigation of Dr. Fort's claims until she files an administrative claim under FECA and the Secretary of Labor has the opportunity to decide whether her claims are covered. (Def.'s Br. at 25–36.)

### 1.    FECA Overview

The Federal Employees Compensation Act ("FECA") provides federal employees with a comprehensive remedy for injuries "sustained while in the performance of [their] duty." 5 U.S.C. § 8102(a). Where an injury falls within FECA's coverage, FECA offers the "*exclusive* remedy" for that injury. *Heilman v. United States*, 731 F.2d 1104, 1109 (3d Cir. 1984) (emphasis in original) (citing 5 U.S.C. § 8116(c)); *see also DiPippa v. United States*, 687 F.2d 14, 17 (3d Cir. 1982) ("Where FECA applies, it unambiguously precludes 'all other liability of the United States . . . under a Federal tort liability statute.'" (quoting 5 U.S.C. § 8116(c))). The Secretary of Labor (the "Secretary") ultimately and conclusively decides FECA claims, without the possibility of judicial review. *See* 5 U.S.C. § 8128(b) ("The action of the Secretary or his designee in allowing or denying a payment . . . is final and conclusive for all purposes and with respect to all questions of law and fact[] and not subject to review . . . by a court"); *DiPippa*, 687 F.2d at 17 (holding that Secretary's decision regarding FECA coverage is absolutely immune from judicial review). Therefore, federal courts lack subject matter jurisdiction over claims that fall within FECA's perimeter because the United States has not waived its sovereign immunity for such suits. *See Heilman*, 731 F.2d at 1109–10 (citation omitted).

In "deference" to the Secretary's exclusive authority over FECA claims, the Third Circuit has instructed that "where there is a 'substantial question' regarding FECA coverage, the federal courts will not entertain a claim, but rather will abstain from further action until the Secretary has made a determination regarding FECA coverage." *Heilman*, 731 F.2d at 1110 (citing *DiPippa*,

687 F.2d at 16). There is a "substantial question" regarding FECA's coverage "unless it is *certain* that the Secretary would find no coverage." *Id.* (emphasis added).

## 2.    Scope of the Court's Consideration

Before considering whether a "substantial question" exists, the Court must resolve the parties' dispute over the Court's ability to consider Dr. Fort's allegations made outside the operative pleading in this matter. Plaintiffs argue that the only relevant document at this point is the TAC, which contains allegations solely related to harmful conditions in Dr. Fort's *residence* and is silent with respect to harmful conditions in Dr. Fort's *workplace*. (Pls.' Opp'n Br. at 24–26.) The United States responds that on this posture, the Court may consider other documents in which Dr. Fort alleged that harmful conditions in her workplace gave rise to the same injuries underlying this suit. (Def.'s Br. at 26–30.)

A party raises a "factual attack" to a court's jurisdiction over a claim when the party argues that "the facts of the case . . . beyond the pleadings to ascertain the facts" do not support jurisdiction. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In deciding a factual attack to jurisdiction, "a court may weigh and 'consider evidence outside the pleadings.'" *Id.* (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). In order to treat a motion to dismiss on subject matter jurisdiction grounds as a factual attack, the challenging party must offer "a factual dispute" rather than merely contesting the assertions made in the complaint. *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982)).

The United States offers ample competing facts that compellingly call into question the Court's jurisdiction. Specifically, the United States points to Dr. Fort's allegations in her FTCA administrative claim and her complaint in a separate employment discrimination claim in which

Dr. Fort alleges that she was exposed to harmful conditions in *both* her residence and workplace. (Def.'s Br. at 28–30; Exs. A & B to Rey Decl.) The United States also offers the opinion of a Deputy Director at the OWCP that "there is substantial likelihood that [Dr. Fort's] injuries would be covered under FECA." (Ex. A to Valdivieso Decl.) Furthermore, Plaintiffs' briefing is silent on the proper standard of review and offers no authority for the Court to disregard the documents the United States offers, instead generally asserting that consideration of facts outside the TAC is inappropriate. (*See generally* Pls.' Opp'n Br. at 23–28.) The Court finds that the United States has brought a factual attack against the Court's subject matter jurisdiction. *See Horton v. United States*, 144 F. App'x 931, 932 (3d Cir. 2005) (applying factual attack standard and affirming dismissal of tort claim for lack of subject matter jurisdiction on the grounds that there was a "substantial question" of FECA's coverage).

Plaintiffs offer several other unavailing arguments against the Court's consideration of evidence outside the TAC. For example, Plaintiffs contend that it is inappropriate for the Court to consider the United States's favorable, "self-serving" opinion from Valdivieso, obtained specifically for the purpose of this litigation. (Pls.' Opp'n Br. at 25–26.) First, the Court notes that the OWCP raised the possibility of FECA's coverage as early as November 2019, well before Dr. Fort filed her tort claim. (Ex. B to Rey Decl.) Second, it would undermine FECA's clear command that the Secretary's determination of FECA's coverage is unreviewable if a plaintiff could circumvent the Secretary's determination altogether by refusing to submit a claim under FECA. In a case such as this, an opinion letter from the OWCP may be the only way the Secretary can take a position on Dr. Fort's claims. Finally, as the United States correctly notes, courts routinely consider OWCP opinions in support of finding that a "substantial question" exists. *See, e.g.*, *Gill v. United States*, 471 F.3d 204, 208 (1st Cir. 2006) (considering declaration of federal employee

who reviewed the plaintiffs' complaint and had concluded that a 'substantial possibility' FECA would apply); *Muse v. VA Hosp.*, No. 18-301, 2018 WL 6599470, at *4 n.2 (W.D. Pa. Dec. 17, 2018) (same); *O'Donnell v. United States*, No. 04-101, 2006 WL 166531, at *4 n.4 (E.D. Pa. Jan. 20, 2006) (same). Therefore, while Valdivieso's letter opinion is neither binding nor dispositive, it is clearly relevant and the Court may consider it.

Plaintiffs also cite the principle that the Court's subject matter jurisdiction is determined at the time the original complaint was filed—i.e. February 15, 2020—such that consideration of the subsequently-written OWCP opinion letter is inappropriate. (Pls.' Opp'n Br. at 26); *see Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." (citation and quotation marks omitted)). However, *Grupo Dataflux* applies the time-of-filing analysis to the *facts* as the existed at the time of filing for the purposes of a court's diversity jurisdiction analysis. Here, the United States does not seek the Court to consider facts that have changed since Dr. Fort filed suit. Thus, *Group Dataflux* is inapposite.

Therefore, the Court proceeds to the issue of whether a "substantial question" of FECA's coverage calls the Court's subject matter jurisdiction into question, considered in light of Plaintiffs' allegations in the TAC as well as her allegations made outside the TAC.

### 3.     Substantial Question

As stated above, FECA covers injuries "sustained while in the performance of [the federal employee's] duty." 5 U.S.C. § 8102(a). While living at the Apartment for thirty years, Dr. Fort was also employed by the VA at their Lyons campus. The United States points to multiple documents outside of the complaint in which Dr. Fort alleged that her injuries underlying her tort claim here stemmed from on-the-job exposure to dangerous substances. In her 2019 FTCA

administrative claim, Dr. Fort wrote that her symptoms were "aggravated whenever" she worked in a particular building at the Lyons campus and that she observed "black-colored mold" in the ice machine, water pipes, and sink area of that building. (Ex. G. to O'Donnell Decl. at *25.) Dr. Fort repeated this allegation in her employment discrimination suit. Am. Compl., *Fort v. Wilkie*, No. 21-20656 (D.N.J. May 11, 2021), ECF No. 4 ¶¶ 18, 20–22, 28. Dr. Fort's alleged injuries in her employment discrimination suit mirror those claimed in the instant suit. (*Compare id.* ¶¶ 23–28 *with* TAC ¶¶ 32, 37–38, 40–41, 45.)

These competing allegations over whether Dr. Fort's injuries stemmed from exposure at her residence, rather than her workplace, lie at the heart of FECA's coverage question here. The United States argues that "Dr. Fort's alleged exposure within the VA Lyons Hospital (which indisputably occurred during the performance of her duties as a federal employee) brings all of her mold-related personal injuries within FECA's broad coverage. FECA applies even when the workplace injury—regardless of its severity—merely exacerbated or contributed to a preexisting injury unrelated to work." (Def.'s Br. at 29.) Plaintiffs respond that because the TAC's allegations are limited to injuries only from Plaintiffs' residence, any exacerbation of the injuries that may have occurred in the workplace is irrelevant. (Pls.' Opp'n Br. at 23–24.) Plaintiffs argue that even if the Court considers Dr. Fort's prior allegations of workplace mold, "any minor reference to exacerbation of her condition is not sufficient to override that the [TAC's] allegations themselves are that it was the Apartment, and the Apartment only, that caused her injury." (*Id.* at 24 n.7.)

As set forth above, the Court's consideration at this stage is not limited solely to the allegations contained in the TAC. Furthermore, caselaw supports that when an injury results from both employment and non-employment circumstances, the injury may nonetheless be compensable under FECA. *See Votteler v. United States*, 904 F.2d 128, 129 (2d Cir. 1990) (finding

injuries compensable under FECA where the plaintiff was injured in a car accident unrelated to his employment but aggravated his injuries in the course of his employment); *see also Moe v. United States*, 326 F.3d 1065, 1068–69 (9th Cir. 2003) (finding injuries compensable under FECA where the plaintiff suffered PTSD from a work-related incident that subsequently exacerbated her pre-existing medical condition). As the Employees' Compensation Appeals Board of the Department of Labor ("ECAB") has written:

> The fact that nonwork factors may have also contributed to an employee's disability is not sufficient to take the case out of coverage of [FECA]. Where a person has a preexisting condition which is not disabling but which becomes disabling because of aggravation causally related to the employment, then regardless of the degree of such aggravation, the resulting disability is compensable. Where the medical evidence reveals that factors of employment contributed in any way to the disabling condition, such condition is considered employment related for the purpose of compensation under [FECA].

*Matter of Chasteen & Tennessee Valley Auth.*, 42 E.C.A.B. 493, 499 (1991);[12] *see also In the Matter of Roger L. Deshong & Dep't of the Army, Letterkenny Army Depot, Chambersburg, Pa*, No. Docket No. 02-128, 2002 WL 1999359, at *4 (July 8, 2002) (noting that a claimant can establish FECA's coverage by showing that in part "employment factors alleged to have caused *or contributed* to the presence or occurrence of the disease or condition" (emphasis added)).

The Court finds that because the cause of Dr. Fort's injuries is unclear, a "substantial question" exists as to whether the Secretary would find Dr. Fort's injuries compensable under FECA. It may be that workplace exposure had nothing to do with Dr. Fort's injuries, or that workplace exposure was the sole cause of her injuries, or that residence and workplace exposure

---

[12] ECAB decisions are instructive in determining FECA's potential scope. *See Horton*, 144 F. App'x at 932 (affirming district court's decision that a "substantial question" of FECA coverage existed based in part on the ECAB having accepted jurisdiction in an analogous case).

were both responsible. It may turn out that Dr. Fort's injuries are not compensable in whole or in part under FECA. However, whether the mold in Dr. Fort's home or workplace caused her injuries is a fact question unresolvable at this stage. Whether Dr. Fort is entitled to FECA benefits, or is actually awarded them, is not the relevant jurisdictional question. Rather, the Court's job is to determine whether a "substantial question" of coverage exists. The possibility, suggested by Plaintiff's allegations, that her injuries resulted from workplace exposure, is sufficient to raise a "substantial question" regarding FECA's coverage, and thus, this Court's jurisdiction. In other words, the Court is not "certain" at this point that the Secretary would find no coverage if presented with Dr. Fort's claim. *Heilman*, 731 F.2d at 1110 (citation omitted).

Plaintiffs offer *Wright v. United States*, 717 F.2d 254 (6th Cir. 1983) as an analogous case in which "the plaintiff did not sustain her injuries while performing her duties as a federal employee." (Pls.' Opp'n Br. at 23–24.) In *Wright*, an on-the-job VA hospital employee who had a medical emergency (a ruptured tubal pregnancy) was treated at the VA hospital rather than being transported to a civilian hospital. 717 F.2d at 255. While being treated, the plaintiff's throat was allegedly injured when she was placed on a respirator. *Id.* After being discharged, the plaintiff sued for her injuries under the FTCA. *Id.* at 256. The Sixth Circuit rejected the United States's argument that the plaintiff's claims were covered by FECA because Plaintiff's injuries were not "sustained while Wright was performing her duties as a secretary"—rather, one was an underlying medical condition and the other was sustained while the plaintiff received treatment *as a patient*, not an employee, at the hospital. *Id.* at 258.

Dr. Fort's situation is not analogous. The connection between Dr. Fort's injuries and her employment is not tangential—as Dr. Fort alleged, there was mold at her workplace that she claimed exacerbated her reactions and contributed to the injuries she complained of. Plaintiffs here

cannot foreclose the possibility that Dr. Fort's injuries arose, at least in part, from workplace exposure. Thus, the "causal connection" between Dr. Fort's employment and her injuries, conspicuously absent from the *Wright* plaintiff's case, 717 F.2d at 258, is suggested here.[13]

The Court recognizes that ordering Dr. Fort to file a FECA claim may ultimately bar her recovery given FECA's three-year statute of limitations. *See* 5 U.S.C. § 8122(a). First, the "deference" this Court must show to the Secretary's determination over whether FECA coverage attaches to Dr. Fort's claims, *Heilman*, 731 F.2d at 1110, does not offer flexibility in this Court's determination of whether a "substantial question" exists. Congress's jurisdictional strictures cannot be ignored because of the result of their application, including foreclosed recovery. *See Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94 (1983) (holding that FECA adopted a "principal compromise" of waiving the United States's immunity to suit for workers' compensation claims in exchange for "protect[ing]" the government from FTCA claims). Furthermore, in another case, the Third Circuit implicitly accepted the possibility that finding that FECA stripped the district court of jurisdiction over a tort claim, the plaintiff may be left unable to recover. In *Eufrosina v. Sec'y of Def.*, the Court affirmed the district court's dismissal of a plaintiff's tort claims for lack of jurisdiction in order for the plaintiff to file a FECA administrative claim, despite the fact that the plaintiff worked for the government from 1990 to 1995 and was diagnosed with cancer in 2006, and the district court dismissed the plaintiff's claims in 2009. 393 F. App'x 1, 2 (3d Cir. 2010). As the court below wrote in that matter in noting that the plaintiff

---

[13] Other reasons caution against reliance on *Wright*. There appears to be tension, if not outright conflict, between the *Wright*'s bright-line delineation between on- and off-the-job injuries and the ECAB's recognition that a work-exacerbated pre-existing condition may be compensable under FECA. *See Matter of Chasteen & Tennessee Valley Auth.*, 42 E.C.A.B. at 499. Furthermore, the Sixth Circuit in *Wright* applied a different definition for "substantial question" than the Third Circuit does, which further counsels caution against reliance. *See Wright*, 717 F.2d at 257 ("A substantial question of FECA coverage is generally present where the Secretary has undertaken an 'action' to award or deny FECA benefits.").

could file a FECA claim after dismissal, "[t]he Court expresses no view as to whether [the plaintiff's] claim would be timely or whether she would be entitled to any relief." *Eufrosina v. Gates*, No. 08-3633, 2009 WL 4122728, at *1–3 (E.D. Pa. Nov. 24, 2009).

Furthermore, Dr. Fort cannot claim to have been unaware that the Secretary's position was that her claims may have been covered under FECA. The United States repeatedly advised Plaintiff that her claims may be covered by FECA, including before suit was filed in November 2019, in which the OWCP's attorney specifically warned Dr. Fort that the federal court would lack jurisdiction over the claim and that FECA claims were subject to a statute of limitations. (Ex. B to Rey Decl. at *23–24.) Prior to filing the pending Motion seeking a stay, the United States twice previously filed motions to stay in order to offer the Plaintiff the opportunity to seek the Secretary's decision on whether FECA applied to Dr. Fort's claims, on May 20, 2021, (ECF No. 23), and April 29, 2022, (ECF No. 55). Because Plaintiff opted to not file a FECA administrative claim, the Secretary had no avenue to decide whether FECA covered Dr. Fort's claims. Therefore, filing a letter opinion giving the OWCP's opinion that, based on Dr. Fort's allegations, there was a "substantial likelihood that [Dr. Fort's] injuries would be covered under FECA," (Ex. A to Valdivieso Decl. at 3), was the only viable way for the Secretary to take a position here. Thus, although the Court's decision does not hinge on the Valdivieso letter opinion,[14] it supports the conclusion that a "substantial question" exists.

Having found that the Court lacks jurisdiction over Dr. Fort's claims (and that Dr. Ramirez-Fort's and the Estate's claims are dismissed), the Court will stay the case until Dr. Fort can file a FECA claim and the Secretary resolves the question of FECA's coverage. This is the prudential

---

[14] The Court does not agree with the United States that the OWCP's letter opinion, by itself, creates "a substantial question of FECA coverage" that makes further inquiry unnecessary. (Def.' Br. at 31–32.) Valdivieso's opinion is not a decision by the Secretary on whether to award compensation under FECA, which Congress has instructed is unreviewable by this Court. 5 U.S.C. § 8128(b).

approach the United States suggests rather than outright dismissal. (Def.'s Br. at 33.) Plaintiffs join the request in the event the Court agrees with the United States that a "substantial question" of coverage exists. (Pls.' Opp'n Br. at 18 n.8.) It is well established that, to avoid prejudice to a plaintiff with unresolved questions of FECA's coverage, the federal case should be stayed rather than dismissed. *See DiPippa*, 687 F.2d at 20 ("To avoid statute of limitations problems, the district court should stay proceedings in the action until the Secretary resolves the question of FECA coverage." (citations omitted)).[15]

The Court expresses no view on the merits of Plaintiffs' claims and the potential that her serious injuries are, as she alleges, tied to unhealthy conditions in the Apartment. However, given the uncertainty here—since it is not clear either way whether FECA covers Dr. Fort's claims—the Court will grant the United States's request to stay the matter and allow the Secretary to have her say.

## C.   UNITED STATES'S REMAINING ARGUMENTS

The United States also moved to dismiss the counts of the TAC claiming strict liability, (Count Four, TAC ¶¶ 118–25), and intentional infliction of emotional distress ("IIED"), (Count Five, TAC ¶¶ 126–34). The United States contends that the Court lacks subject matter jurisdiction over Plaintiffs' strict liability claim, along with the TAC's claims for punitive damages, by the United States's sovereign immunity. (Def.'s Br. at 12.) The United States also argues that the TAC fails to state a claim for IIED. (*Id.* at 13–14.)

Because Dr. Ramirez-Fort's and Estate's claims are time-barred, and Dr. Fort's claims are stayed pending outcome of the FECA proceedings, the Court need not, and in the case of the United

---

[15] Staying an action, rather than dismissing, is not necessary when "it clearly appears from the allegations of the complaint that coverage unquestionably obtains, i.e. where the injuries undoubtedly occurred while the employee was performing his duty on behalf of the United States or its agency." *Heilman*, 731 F.2d at 1110. Because FECA's coverage is not clear, dismissal is inappropriate here.

States's IIED argument, may not, address the alternative arguments. *See Horton*, 144 F. App'x at 931–32 ("[J]urisdiction is limited to determining if a substantial question of coverage under FECA exists." (citation omitted)). The United States may re-raise these issues in a renewed Motion to Dismiss if Dr. Fort's claims proceed after the Secretary's decision on her FECA claim.

IV.     **CONCLUSION**

For the reasons set forth above, the United States's Motion for Summary Judgment on Dr. Ramirez-Fort's and the Estate's claims is **GRANTED** and the United States's Motion to Stay Dr. Fort's claims for lack of subject matter jurisdiction is **GRANTED**. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: January 22, 2024